UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――x

ORLANDINA BALAN,                              Civ. No.

        Plaintiff,

  -against-                                **VERIFIED COMPLAINT**

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,                            Jury Trial Demanded

        Defendant.
―――――――――――――――――――――――x

    Plaintiff Orlandina Balan, by and through her undersigned counsel, for her Complaint against the above-captioned Defendant, alleges as follows:

## NATURE OF THE ACTION

    1.    Plaintiff brings this action for money damages and injunctive relief against Defendant Massachusetts Mutual Life Insurance Company ("Defendant" or "Mass Mutual") for breach of contract, breach of fiduciary duty, unjust enrichment, conversion, and deceptive acts and practices in violation of New York's General Business Law §349 for refusing to transfer her Non-ERISA Tax-Sheltered Annuity account with Mass Mutual to another qualified company, and then, after the funds in her Mass Mutual account had already been transferred to the other company, reversing the transaction and transferring the funds back into her Mass Mutual account without Plaintiff's knowledge or consent, and in violation of the relevant contract and applicable law.

## THE PARTIES

2. Plaintiff Orlandina Balan is a resident of Nassau County, New York.

3. Defendant Massachusetts Mutual Life Insurance Company is an insurance company authorized to do business in the State of New York, with its principal place of business located at 1295 State Street, Springfield, Massachusetts 01111-0001.

## JURISDICTION & VENUE

4. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000, and the parties are citizens of different states.

5. This Court has personal jurisdiction over the Defendant because it conducts a substantial amount of its business within the District, and most of the acts complained of giving rise to the matter in controversy occurred within this District.

6. This Court has supplemental jurisdiction to hear and decide relevant causes of action arising under the laws of the State of New York.

7. Venue is proper under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a), as many of Defendant's actions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

8. On or about November 30, 2015, Plaintiff, who is employed by the Copiague School District ("School District"), opened a Mass Mutual Non-ERISA Tax Sheltered Annuity ("TSA") under Section 403(b) of the Internal Revenue Code of 1986, as amended, and the Income Tax Regulations thereunder (I.R.C.). Thereafter, Plaintiff continued to contribute to this Mass Mutual TSA retirement account as part of her retirement planning.

9. In early 2024, Plaintiff decided to transfer her TSA account, with a balance of $87,707.31, from Mass Mutual to Equitable Advisors, LLC ("Equitable"), due to the more favorable investment options and features offered by that company.

10. On February 20, 2024, Plaintiff submitted the required TSA Full Surrender form to Mass Mutual, requesting the transfer of her funds. The process, known as a Contract Exchange, was approved by the Plan Administrator, U.S. OMNI & TSACG Compliance Services ("Omni"), which oversees and regulates all transactions related to the TSA accounts for the School District.

11. Paragraph 6 of Mass Mutual's TSA Non-ERISA Article 11 (NY), entitled "Non-ERISA Tax-Sheltered Annuity Endorsement" provides as follows:

> Direct transfers to another contract qualifying under I.R.C. Section 403(b) or to a custodial account qualifying under I.R.C. Section 403(b)(7) may be made only if permitted by the Contract Owner's TSA plan and applicable federal tax law. To the extent provided by federal tax law, amounts subject to distribution restrictions under the I.R.C. may only be transferred to such a contract or account with the same or more stringent restrictions. Direct trustee-to-trustee transfers may be made to a defined benefit governmental plan (as defined in I.R.C. Section 414(d) as provided in I.R.C. 403(b)(13).

12. The Plain Administrator, Omni, found that the proposed transfer of Plaintiff's TSA account was permissible under the relevant rules and regulations.

13. On or around March 2024, Mass Mutual issued a check to Equitable, successfully transferring the funds from Plaintiff's TSA account. However, the very next day, Mass Mutual reversed the transaction without Plaintiff's prior knowledge or consent, withdrawing the funds from the Equitable account and returning them to Mass Mutual.

14. Plaintiff received an email notification from Mass Mutual on March 14, 2024, indicating that her TSA Full Surrender form was deemed "Not In Good Order" ("NIGO") due to an alleged loan on the account and a purported failure to meet the distribution eligibility

requirements. This email contradicted Defendant's prior position as communicated on a call to Plaintiff and her financial advisor, Zachary Krischer, when Plaintiff inquired as to the necessary steps to effectuate the Contract Exchange. Defendant previously represented to Plaintiff and Mr. Krischer that the loan would not impede the Contract Exchange, as all taxes and penalties on the loan had been paid.

15. In response to the NIGO determination, Plaintiff, with the assistance of Zachary Krischer, submitted updated forms on March 19 and March 25, 2024, each time correcting the supposed deficiencies as instructed by Mass Mutual. Despite these efforts, Mass Mutual continued to deem the forms as NIGO, citing bogus distribution eligibility reasons and the supposedly unresolved loan issue, despite Omni's confirmation that the loan should not prevent the transfer.

16. Throughout this period, Plaintiff and her financial advisor, Zachary Krischer, engaged in multiple communications with Mass Mutual, Omni, and representatives of the School District, in an effort to resolve the issue. Despite repeated assurances by Omni and the School District that the transfer was permissible and should proceed, Mass Mutual refused to comply, providing contradictory and erroneous reasons for the continuing denial.

17. For example, on June 6, 2024, the Superintendent of Finance and Operations of the School District, Susan Kanuika, was informed that the loan had to be paid off for the transfer to proceed, directly contradicting previous statements from Mass Mutual that the loan was irrelevant to the transfer process. The conflicting information from Mass Mutual representatives compounded the confusion caused by Mass Mutual. In an email to Plaintiff dated June 28, 2024, Mass Mutual made no reference to any requirement that the loan be paid off, but rather again

pointed to Plaintiff's alleged failure to meet certain eligibility requirements as the reason for refusing to process the transfer.

18. The Contract governing Plaintiff's Mass Mutual's TSA retirement account does not contain any provisions allowing Mass Mutual to unilaterally reverse a completed transaction, particularly without the account holder's consent or prior notice. The unauthorized reversal of the transaction by Mass Mutual was a clear breach of the contractual obligations that Mass Mutual owed to the Plaintiff.

**Impact on Plaintiff's Retirement Planning**

19. Due to Mass Mutual's continued refusal to release the funds, Plaintiff has suffered significant personal distress and disruption of her retirement planning. Her contributions to her Mass Mutual account were halted based on the initial assumption that the transfer had been completed, leaving her without the ability to contribute to either account effectively.

20. The delay in processing the transaction also has had a substantial negative financial impact on Plaintiff's retirement savings. Her new account with Equitable, as of July 31, 2024, has earned nearly 6% year-to-date in interest returns. Had the account been transferred as originally requested, Plaintiff would have gained between $4,500 and $5,000 in interest over a six-month period, or approximately $10,000 in lost interest each year.

21. Thus, the delay and mishandling of Plaintiff's transfer request has caused her undue hardship, frustration, and significant financial loss.

**Plaintiff's Unavailing Efforts to Resolve the Issue**

22. On May 17, 2024, Plaintiff filed a complaint with the Better Business Bureau ("BBB"), outlining the issues encountered with Mass Mutual. In response, Mass Mutual

5

reiterated its erroneous stance and dismissed Plaintiff's grievance complaint without addressing the core issues or providing a path to resolution.

23. On June 10, 2024, Mass Mutual formally responded to Plaintiff's BBB Complaint, stating that Plaintiff's distribution requests were deemed NIGO due to the alleged "unresolved loan" and "distribution eligibility" issues. Mass Mutual's response failed to recognize that the transfer had been approved by Omni, and continued Mass Mutual's stonewalling approach to the matter, which was to provide erroneous and misleading information regarding the eligibility requirements for the transfer.

## JURY TRIAL DEMAND

24. Plaintiff requests a trial by jury on all issues so triable.

## COUNT I
### (Breach of Contract)

25. Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

26. Under New York law, the elements for a claim of breach of contract include (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant and (4) damages. *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011).

27. Defendant Mass Mutual breached the annuity contract it had with Plaintiff by failing and refusing to transfer the funds in her TSA account to Equitable, despite Plaintiff fully complying with all requirements and receiving approval from the Plan Administrator, Omni, for the transfer.

28. As a direct result of Defendant's breach of its contract, Plaintiff suffered damages in an amount to be determined at trial, but in no event less than $75,000.

## COUNT II
### (Breach of Fiduciary Duty)

29. Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

30. Under New York law, the elements of a breach of fiduciary duty claim are (1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach. *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009).

31. Defendant breached its fiduciary duty to Plaintiff, who was the Annuity Contract participant and beneficiary by refusing and failing to transfer the funds in Plaintiff's Mass Mutual TSA account as per her instructions, despite the fact that the transfer complied with all applicable rules and regulations, and was approved by Omni.

32. As a direct result of said breach of fiduciary duty. Plaintiff was damaged in an amount to be determined at trial, but in no event less than $75,000.

## COUNT III
### (Unjust Enrichment)

33. Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

34. Under New York law, a claim for unjust enrichment requires a showing that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good

conscience to permit the other party to retain what is sought to be recovered. *Moreira v. Societe Generale, S.A.*, 125 F.4th 371, 385 (2d Cir. 2025).

35. Defendant was unjustly enriched by retaining control over Plaintiff's Mass Mutual TSA account, contrary to the approval and guidelines of the Plan Administrator, Omni. Defendant's refusal and failure to transfer the funds as requested has allowed it to benefit at Plaintiff's expense.

36. As a result thereof, Plaintiff is entitled to an award of money damages in an amount to be determined at trial, but in no event less than $75,000.

## COUNT IV
### (Conversion)

37. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint as though fully set forth herein.

38. To state a claim for conversion under New York law, a plaintiff must allege (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights. *Dorce v. City of New York*, 608 F. Supp. 3d 118, 135 (S.D.N.Y. 2022).

39. Defendant converted Plaintiff's property and funds when it unilaterally reversed the completed transfer of Plaintiff's funds to Equitable, without prior notice or consent from Plaintiff.

40. As a direct result of Defendant's conversion, Plaintiff was damaged in an amount to be determined at trial, but in no event less than $75,000.

## COUNT V
### (Deceptive Business Practices in Violation
### of New York General Business Law § 349)

41. Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

42. New York's GBL § 349(a) prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York State. The statute also authorizes a court to award attorney's fees to Plaintiff's counsel.

43. To state a claim under Section 349, a plaintiff must allege that a defendant engaged in (1) consumer-oriented conduct that was (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice. *Dfinity Found. v. New York Times Co.*, 702 F. Supp. 3d 167, 177 (S.D.N.Y. 2023), aff'd, No. 23-7838-CV, 2024 WL 3565762 (2d Cir. July 29, 2024).

44. Defendant engaged in a pattern of deceptive acts and practices with regard to Plaintiff's TSA account in that it repeatedly gave false and conflicting information regarding the transfer process and requirements.

45. As a direct result thereof, Plaintiff was financially damaged in an amount to be determined at trial, but in no event less than $75,000, plus attorneys' fees.

WHEREFORE, Plaintiff demands a judgment against Defendant as follows:

A. A declaratory judgment, declaring that Defendant has wrongfully failed and refused to transfer the funds in Plaintiff's TSA account;

B. Preliminary and Permanent Injunctive Relief, directing Defendant to immediately transfer the subject TSA account funds as per Plaintiff's instructions and pursuant to Omni's approval;

C. An award of money damages pursuant to Counts I through V herein, plus attorneys' fees and costs; and

    D.  Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       Apil 28, 2025

                          McCALLION & ASSOCIATES LLP

*/s/ Kenneth F. McCallion*
Kenneth F. McCallion
Darragh O'Boyle
Attorneys for Plaintiff
100 Park Ave – 16th Floor
New York, New York 10017
(646-366-0884)

## VERIFICATION

ORLANDINA BALAN, hereby affirms and verifies as follows under penalty of perjury:

1. I am the Plaintiff in this Complaint and am fully familiar with the facts and circumstances of this case.

2. I have read the foregoing Complaint and find the allegations contained therein to be true and correct, except as to those made upon information and belief, and as to those allegations, I believe them to be true and correct.

Dated: April 28, 2025

_____
ORLANDINA BALAN